**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

AOUA ROYSTER,
     *Plaintiff*,

   v.

CITY OF PROVIDENCE,
     *Defendant*.

**C.A. No. 1:26-cv-00353-JJM-PAS**

**DEFENDANT CITY OF PROVIDENCE'S**
**MEMORANDUM OF LAW IN SUPPORT OF ITS**
**MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

In this employment case brought by a former City of Providence employee, Plaintiff Aoua Royster ("Royster") asks this Court to adjudicate the same April 5, 2023 termination she has been litigating against the City of Providence (the "City") in the Rhode Island Superior Court since September 2023.  The Complaint should be dismissed for the following reasons.

First, the sole federal claim, and the sole asserted basis for this Court's jurisdiction, is a Title VII claim that fails at the courthouse threshold twice over:  Plaintiff's administrative charge was filed with the Rhode Island Commission for Human Rights ("RICHR") 338 days after her termination, beyond even Title VII's outer 300-day limit, and she has never obtained the federal notice of right to sue that is a mandatory precondition to a Title VII action.  The first defect is incurable.  No amendment or after-acquired notice can change the date the charge was filed.

Second, shorn of its untimely and barred Title VII count, only the Complaint's alleged state-law claims remain between non-diverse parties which can only be considered under the Court's supplemental jurisdiction under 28 U.S.C 1367(a).  Here, however,.  The weight of comity, economy, and fairness points toward declining supplemental jurisdiction given that Plaintiff is already litigating this case in the Rhode Island Superior Court, and has been since 2023, in the

matter of *Royster v. Cardillo*, C.A. No. PC-2023-04842, where she is alleging the same discrimination and retaliation theories arising from the same termination.

Third, in the alternative, the parallel, first-filed, and far more advanced Superior Court action warrants at minimum a stay of this later-filed duplicate action.

Finally, even if the Court reaches the merits of Plaintiff's Complaint, the Complaint's allegations, read in the light most favorable to Plaintiff, do not plausibly allege discrimination or retaliation.

## FACTUAL ALLEGATIONS AND PROCEDURAL BACKGROUND

Royster was first employed by the City on December 3, 2018, and on December 2, 2021, moved into a position with the City's Department of Public Works ("DPW") that included responsibility for the DPW budget. Compl., ¶¶ 8–9. Plaintiff alleges she was the only African-American, Muslim woman supervisor in the department. *Id*., ¶ 10. While at the DPW, she was responsible for the annual budget. *Id*., ¶ 9.

Royster identifies a series of workplace episodes she characterizes as disparate treatment: that her decisions managing front-office staff were "undermined" by unspecified employees and supervisors; that her supervisors failed to act when she reported unauthorized changes to payroll; and that her proposed solutions to payroll and front-office issues went unsupported. *Id*., ¶¶ 12–14. She further alleges that she was excluded from a meeting concerning a hiring decision to which other female employees were invited; that she was subjected to unspecified "false allegations;" that she was entered as "terminated" in the City's system before her actual termination; and that her predecessor "suffered the same payroll issues" but was not terminated. *Id*., ¶¶ 16-18, 30.

Royster alleges that "[i]n or about summer of 2022" she complained to Human Resources that she was subjected to discrimination based on race and religion, and that the ensuing

investigation was inadequate. *Id*., ¶¶ 19-20. She alleges she was terminated on April 5, 2023, and that the termination caused lost income, emotional distress, and other damages. *Id*. ¶¶ 28, 35.

On March 8, 2024, while represented by counsel, Plaintiff filed a verified Charge of Discrimination concerning these events with the RICHR. **Attachment A**. The Charge rests on the same facts and the same April 5, 2023 termination date, and alleges violations of RIFEPA and the Rhode Island Civil Rights Act. *Id*. On February 27, 2026, a RICHR Preliminary Investigating Commissioner found no probable cause on the allegations of discrimination and retaliation based on gender and religion, and probable cause as to race under RIFEPA. **Attachment B**. On March 3, 2026, the City elected under R.I. Gen. Laws § 28-5-24.1(c) to terminate the Commission proceedings and have the matter heard in the Superior Court. On March 6, 2026, the RICHR issued a Notice of Right to Sue under R.I. Gen. Laws § 28-5-24.1(a) and (c), advising Plaintiff that she could commence suit in the Superior Court within 90 days. **Attachment C**. Although Plaintiff's charge was prepared on the EEOC's charge form and marked for cross-filing with the EEOC, the RICHR's notices do not list a corresponding EEOC charge number. No EEOC-issued notice of right to sue relative to any alleged Title VII violation is before this Court.

More than two and a half years before filing this suit, Plaintiff, then represented by counsel, sued over the same termination in Rhode Island Superior Court. **Attachment D**. On September 27, 2023, she filed *Royster v. Lance Cardillo*, C.A. No. PC-2023-04842, naming the defendant "in his capacity as acting Treasurer of the City of Providence," the statutory vehicle for suit against the City. That action, arising from the April 5, 2023 termination, originally asserted counts for unlawful termination under § 904 of the City Charter, breach of contract, promissory estoppel, intentional infliction of emotional distress, and negligent infliction of emotional distress. **Attachment D**, Counts I - V. The Superior Court has since granted Plaintiff leave to amend, and

her Second Amended Complaint is now the operative pleading.  **Attachment E**.  The operative complaint adds claims for discrimination and retaliation on the basis of race, national origin (African birth), religion, and gender under the Rhode Island Civil Rights Act, R.I. Gen. Laws § 42-112-1 *et seq*., resting on the same operative facts pleaded here: that Plaintiff was the only African-American, Muslim, African-born supervisor in the department; that she complained to Human Resources of discrimination in the summer of 2022; that her predecessor "suffered the same errors and issues . . . but was not terminated;" and that the stated reasons for her termination "were false and pretextual."  *Id*., Count VI.  The Superior Court action is well advanced, with substantial written discovery exchanged between the parties.

Royster filed this action on June 1, 2026, using the Court's form complaint and now proceeding *pro se* in both this action and the Superior Court action.  She checked "Federal question" as the sole basis for jurisdiction and identified "Title VII of the Civil Rights Act of 1964" as the federal law at issue; she did not, and could not, invoke diversity jurisdiction.  Compl. at 4.  As her statement of claim, Royster attached a modified version of her RICHR Charge of Discrimination.  It rests on the same facts and the same April 5, 2023 termination, and asserts discrimination "based on race and religion" and retaliation for her summer 2022 internal complaint.  Compl., ¶¶ 32–33.  As compared with the verified charge filed with the RICHR, the attached version adds an invocation of Title VII to its list of violated statutes, an allegation that Plaintiff was born in Bamako, Mali, and an allegation that the issuance of her 2022 W-2 was delayed.  *Id*., ¶¶4, 18, 36.

## STANDARD OF REVIEW AND REQUEST FOR JUDICIAL NOTICE

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to challenge the sufficiency of a complaint, and "only a complaint that states a plausible claim for relief survives a motion to

dismiss." *Okpoko v. Heinauer*, 796 F. Supp.2d 305, 321 (D.R.I. 2011) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plaintiff must provide more than labels, conclusory statements, and recitations of the elements of a cause of action; the complaint's factual predicate must be "plausible on its face." *Id.*

Because Royster now proceeds *pro se*, the City acknowledges that her pleadings are entitled to liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (*per curiam*). But "*pro se* status does not insulate a party from complying with procedural and substantive law," *Ahmed v. Rosenblatt*, 118 F.3d 886, 890 (1st Cir. 1997). Critically, as set out *infra*, the events that are dispositive of this Motion, specifically, the filing of Plaintiff's administrative charge and the prosecution of her Rhode Island Superior Court action, all occurred while Plaintiff was represented by counsel.

In deciding this Motion, the Court may consider, without converting it into one for summary judgment, not only the Complaint but also "matters fairly incorporated within it and matters susceptible to judicial notice." *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019) (quoting *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)). An affirmative defense, including untimeliness, may be resolved on a Rule 12(b)(6) motion where the facts establishing it are "clear 'on the face of the plaintiff's pleadings.'" *Zenon*, 924 F.3d at 616 (quoting *Santana-Castro v. Toledo-Dávila*, 579 F.3d 109, 113–14 (1st Cir. 2009)). The Court may take judicial notice of any fact "not subject to reasonable dispute" that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," and "must take judicial notice if a party requests it and the court is supplied with the necessary information." Fed. R. Evid. 201(b)(2), (c)(2). The records of other courts are a familiar subject of such notice, as are official public records generally. *See Zenon*, 924 F.3d at 618; *Watterson v. Page*, 987 F.2d 1, 3–4

Page **5** of **19**

(1st Cir. 1993).  Royster's verified RICHR charge is properly before the Court on the independent ground that her statement of claim in this action is substantively identical to it, and the charge is thus a document fairly incorporated in the Complaint.  Accordingly, the City requests, pursuant to Fed. R. Evid. 201(c)(2), that the Court take judicial notice of Plaintiff's verified RICHR charge, including, specifically, that the Commission received it on March 8, 2024, as stamped on its face, as well as the RICHR's determinations and Notice of Right to Sue, and the filings and docket in the parallel Superior Court action, true copies of which are attached as **Attachments A through E**.  The City relies on those materials only for their existence, dates, and legal effect, not for the truth of any contested factual assertion within them.

**ARGUMENT**

**I.  PLAINTIFF'S TITLE VII CLAIM FAILS AS A MATTER OF LAW BECAUSE IT IS BOTH UNTIMELY AND UNEXHAUSTED.**

Exhaustion under Title VII "embodies two key components:  the timely filing of a charge with the EEOC and the receipt of a right-to-sue letter from the agency."  *Rivera-Díaz v. Humana Ins. of P.R., Inc.*, 748 F.3d 387, 389–90 (1st Cir. 2014) (quoting *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005)).  These requirements are mandatory claim-processing rules that the Court must enforce when, as here, the defendant timely raises them.  *Fort Bend County v. Davis*, 587 U.S. 541, 549 (2019); *see Doe v. Town of South Kingstown*, 762 F. Supp.3d 166, 174–75 (D.R.I. 2025) (enforcing Title VII's claim-processing requirements and granting judgment on the Title VII counts where the exhaustion defense was raised in the defendant's first responsive pleading).  Plaintiff has satisfied neither in this case.  Her charge was filed 38 days after Title VII's outer 300-day limit expired, and she has never received a federal notice of right to sue.  The first defect, moreover, is one that no later-issued notice or amended pleading can cure.

Page **6** of **19**

**A.      The Charge Was Not Filed Within Title VII's 300-Day Limitations Period.**

Title VII requires a claimant to file a charge of discrimination within 180 days of the challenged practice, a period "extended to 300 days in deferral jurisdictions if the plaintiff has initially instituted proceedings with a State or local agency" authorized to grant or seek relief from the practice. *Rivera-Díaz*, 748 F.3d at 390 (citing 42 U.S.C. § 2000e-5(e)(1)); *see Mohasco Corp. v. Silver*, 447 U.S. 807, 815–16 (1980) (the 180-day period is "the general rule"). A discrete discriminatory act not made the subject of a timely charge "is not actionable," even if it is related to acts alleged in a timely charge. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). And a termination is a paradigmatic discrete act, easily identifiable and immediately actionable on the day it occurs. *Id*. at 114 (listing "termination, failure to promote, denial of transfer, or refusal to hire" as discrete acts). An "unexcused failure to meet this deadline forecloses recourse to the courts." *Rivera-Díaz*, 748 F.3d at 390 (citing *Jorge*, 404 F.3d at 564).

Plaintiff's charge was untimely on the face of her own pleading and the public record. The termination she challenges, the discrete act on which her Title VII claim rests, occurred on April 5, 2023 by her own allegation. Compl. ¶ 28. The verified charge she filed with the RICHR was not signed and notarized by Royster, nor received by the Commission, until March 8, 2024, a fact established by the agency's own record of which the Court may take judicial notice. **Attachment A**. March 8, 2024 is 338 days after the April 5, 2023 termination, and is 38 days beyond Title VII's 300-day maximum, which expired on January 30, 2024, and is nearly double the 180-day baseline. Every other act alleged, from Plaintiff's December 2, 2021 assignment to the budget role, through her summer 2022 internal complaint, to the pre-termination entry of her name as "terminated" in the City's payroll system, necessarily predates the termination and falls still further outside the window. Indeed, the charge form itself identifies June 1, 2022 as the earliest date of

the alleged discrimination, and April 5, 2023 as the latest date. **Attachment A**. Because the untimeliness is established by the termination date alleged in Plaintiff's own pleading together with the judicially noticeable date her charge was filed, it may be resolved on this Motion. *Zenon*, 924 F.3d at 616; *see Rivera-Díaz*, 748 F.3d at 388, 392 (affirming Rule 12(b)(6) dismissal, with prejudice, of discrimination claims on administrative-timeliness grounds).

No doctrine rescues the claim. The continuing-violation doctrine does not apply to "discrete acts" that occur on "a particular day." *Morgan,* 536 U.S. at 110–14. Plaintiff pleads no hostile-environment theory, and even if her scattered workplace grievances were recharacterized as one, the last act she alleges, the termination itself, still falls outside the 300-day window and thus no contributing act anchors the claim within the filing period. *See Morgan*, 536 U.S. at 117 (hostile-environment claim is timely only if at least one contributing act falls within the filing period). Nor would the timeliness of the charge under Rhode Island law matter, as state-law filing periods do not enlarge Title VII's federal maximum. *See EEOC v. Commercial Office Prods. Co.*, 486 U.S. 107, 123 (1988) (holding, in the converse posture, that "state time limits ... do not determine the applicable federal time limit").

Equitable tolling is likewise unavailable. Tolling "attaches only when a claimant misses a filing deadline because of circumstances effectively beyond her control"; it is "employed sparingly" and "reserved for exceptional cases." *Rivera-Díaz*, 748 F.3d at 390 (quoting *Bonilla v. Muebles J.J. Alvarez, Inc.*, 194 F.3d 275, 278-279 (1st Cir. 1999)). The Complaint alleges no facts that could support it, no concealment or deception by the City, no agency conduct that misled her, and no incapacity. To the contrary, Plaintiff was represented by counsel throughout the charge-filing period; indeed, counsel filed suit over this very termination in the Superior Court in September 2023, well within the 300-day window. Where a claimant has retained an attorney,

constructive knowledge of the filing requirements is presumed. *Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 49 (1st Cir. 2005). Plaintiff's current *pro se* status is immaterial, the operative events all occurred while she was represented by counsel.

Thus, the Title VII claim is time-barred, and because no amendment can alter the date on which the charge was filed, the claim should be dismissed with prejudice. *See Rivera-Díaz*, 748 F.3d at 389, 392.

### B.   Plaintiff Never Obtained the Required Federal Notice of Right to Sue, and No Notice Issued Now Could Cure the Untimely Charge.

The Title VII claim independently fails because Plaintiff has never received a federal notice of right to sue. Under 42 U.S.C. § 2000e-5(f)(1), if a charge is dismissed, or if within one hundred eighty days of filing no civil action has been brought and no conciliation agreement reached, "the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought" by the person claiming to be aggrieved. Receipt of that federal notice is the second "key component" of exhaustion. *Rivera-Díaz*, 748 F.3d at 389–90. The "unexcused failure to exhaust administrative remedies effectively bars the courthouse door." *Jorge v. Rumsfeld*, 404 F.3d 556, 564 (1st Cir. 2005). Furthermore, administrative remedies are not exhausted "until the EEOC issue[s] . . . a right-to-sue letter." *Franceschi v. U.S. Dep't of Veterans Affairs*, 514 F.3d 81, 85-86 (1st Cir. 2008).

It is well settled that a right-to-sue letter from a state agency is not a substitute. This Court so held in *Black v. Brown University*, 555 F. Supp. 880, 884 & n.8 (D.R.I. 1983) (Selya, J.), expressly "reject[ing] plaintiff's assertion that the right-to-sue letter from the [Rhode Island commission] is equivalent to the EEOC right-to-sue letter" because "[t]he plain language of 42 U.S.C. § 2000e-5(f)(1) requires, as a condition precedent to litigating in federal court, a right to

sue letter issued by the EEOC." *Id*. at 884 n.8, *accord Tang v. State of R.I., Dep't of Elderly Affairs*, 904 F. Supp. 55, 58–59 (D.R.I. 1995) (the EEOC letter is a "condition precedent;" dismissing Title VII claims without prejudice where the plaintiff never obtained one).  The rule holds even where a state charge is dual-filed with the EEOC under a worksharing agreement:  dual filing satisfies the charge-filing component, but the employee still "must wait for what is known as a right-to-sue letter" before suing.  *Abraham v. Woods Hole Oceanographic Inst.*, 553 F.3d 114, 119 (1st Cir. 2009) (charge filed with the state agency and forwarded to the EEOC under a worksharing agreement "satisfied this first requirement" of exhaustion; timeliness of the ensuing federal suit measured from the EEOC's dismissal notice); *see also Taite v. Bridgewater State Univ.*, 236 F. Supp.3d 466, 477 (D. Mass. 2017) (a plaintiff whose charge is filed with a state agency and shared with the EEOC "still must obtain a right-to-sue letter from the EEOC in order to bring a Title VII claim," and "those courts that have considered the issue in this Circuit" have so held or assumed).

Here, the only right-to-sue letter in the record issued from the RICHR under R.I. Gen. Laws § 28-5-24.1, a product of state law that authorizes suit under RIFEPA "in the superior court," not a Title VII action in this Court.  The verified charge itself pleaded only state-law claims and nowhere mentions Title VII.  Plaintiff and her former counsel understood the track they had chosen, and they amended the pending Superior Court suit accordingly.  Nothing in the record reflects any federal notice.  To the contrary, although Plaintiff's charge was prepared on the EEOC's form and marked for cross-filing, no document issued identifies an EEOC charge number.  The Court need not determine whether the charge was ever perfected as an EEOC filing, because the Title VII claim fails, either for untimeliness as articulated *supra*, or because  Plaintiff never accomplished even the first component of exhaustion, "the timely filing of a charge with the EEOC," and any

EEOC charge filed now, more than three years after the termination, would be more untimely still. *Rivera-Díaz*, 748 F.3d at 389–90.

The City acknowledges that, standing alone, the absence of a federal right-to-sue notice is potentially a curable condition precedent rather than a jurisdictional defect, and that courts have in narrow circumstances excused it, but no such circumstance is pleaded or exists here. Even if Plaintiff obtained a federal notice tomorrow, her charge would remain one filed 338 days after her termination, and her Title VII claim would remain time-barred for the reasons already discussed. Thus, the claim should be dismissed with prejudice, not merely without prejudice pending exhaustion.

## II.   WITH NO FEDERAL CLAIM REMAINING, THE COURT SHOULD DECLINE SUPPLEMENTAL JURISDICTION OVER THE RIFEPA CLAIM.

Dismissal of the Title VII count leaves only Plaintiff's state-law RIFEPA claim, over which there is no independent basis for federal jurisdiction: Plaintiff invoked only federal-question jurisdiction, and no diversity exists between a Rhode Island resident and a Rhode Island municipality. Compl. at 4, ¶¶ 2,3. The RIFEPA claim, like any other state-law theory the Complaint might liberally be construed to raise[1] can remain in this Court, if at all, only under 28 U.S.C. § 1367(a).

The Court should decline to exercise that jurisdiction. Section 1367(c)(3) expressly permits a district court to decline supplemental jurisdiction when it "has dismissed all claims over which it has original jurisdiction," and "it is settled law that district courts may decline to exercise

---

[1]   The Complaint's passing reference to "emotional distress," Compl. ¶¶ 35, 37, reads as an allegation of damages, not a freestanding count. To the extent it were construed as a common-law claim for intentional infliction of emotional distress, that claim is likewise a state-law claim subject to the disposition urged here, and it would in any event be barred at the threshold by the exclusivity provision of the Rhode Island Workers' Compensation Act, R.I. Gen. Laws § 28-29-20, which "provides the exclusive remedy for claims against employers by employees who have suffered intentional infliction of emotional distress in the workplace." *Iacampo v. Hasbro, Inc.*, 929 F. Supp. 562, 582 (D.R.I. 1996).

supplemental jurisdiction over pendent state law claims when the anchor federal claims for those state law claims are dismissed." *Borrás-Borrero v. Corporación del Fondo del Seguro del Estado*, 958 F.3d 26, 36 (1st Cir. 2020).  The Supreme Court has made clear that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).  The First Circuit treats dismissal of the federal claims "on an early-in-the-game motion to dismiss" as precisely that "usual case." *Rivera-Díaz*, 748 F.3d at 392 (affirming refusal to exercise supplemental jurisdiction over local-law discrimination claims after pleading-stage dismissal of the federal claims); *accord Corrigan v. State of R.I., Dep't of Bus. Regulation*, 820 F. Supp. 647, 664 (D.R.I. 1993) (declining jurisdiction over remaining RIFEPA claims after resolution of the federal claims).

The comity and efficiency factors are particularly strong here, for two reasons.  First, RIFEPA itself channels the private action to the state forum:  following the probable-cause finding and the City's election under § 28-5-24.1(c), the Commission issued Plaintiff a right-to-sue letter providing that she "shall have the right to commence suit in the superior court . . . within ninety (90) days of the date of the right-to-sue letter," with the right to a jury trial there.  R.I. Gen. Laws § 28-5-24.1.  While that venue provision does not itself divest this Court of supplemental jurisdiction, it reflects Rhode Island's considered judgment about where elected RIFEPA claims should be heard, a comity interest that § 1367(c) exists to respect.  *See Cohill*, 484 U.S. at 350 (discretion under the supplemental-jurisdiction doctrine is guided by "judicial economy, convenience, fairness, and comity").  Second, Plaintiff is *already* litigating her termination against the City in that very forum, and has been, in an action filed years before this one alleging the same discrimination and retaliation theories on the same facts.  **Attachment D**.  Retaining a duplicative

state-law claim here would defeat, rather than serve, judicial economy, convenience, fairness, and comity.  The Court should dismiss the RIFEPA claim without prejudice to its prosecution in the Superior Court.

### III.   IN THE ALTERNATIVE, THE COURT SHOULD STAY THIS ACTION IN FAVOR OF THE FIRST-FILED, MORE ADVANCED SUPERIOR COURT LITIGATION.

If the Court retains any state-law claim notwithstanding Part II, the Court should stay this action in deference to the parallel Superior Court proceeding.  *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976), and its progeny supply the governing framework for any stay or dismissal of a federal action in favor of parallel state litigation.  *See Maldonado-Cabrera v. Anglero-Alfaro*, 26 F.4th 523, 526–27 (1st Cir. 2022).  The threshold requirement of parallel proceedings involving "substantially the same parties are litigating substantially the same issues," is plainly satisfied here:  *Royster v. Cardillo* has been pending in Providence County Superior Court since September 2023, involves the same parties, arises from the same April 5, 2023 termination, and its operative Second Amended Complaint pleads the same discrimination and retaliation claims asserted here, on the same facts.  *See OHI Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n*, 687 F. Supp.2d 12, 17 (D.R.I. 2010).  The relief sought here is the same, arising from the same claimed wrongs, under substantially overlapping statutory schemes.

The City recognizes that *Colorado River* deference is reserved for "exceptional circumstances," that the balance is "heavily weighted in favor of the exercise of jurisdiction," and that "[d]uplication and inefficiency are not enough" by themselves to justify deference.  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983); *Maldonado-Cabrera*, 26 F.4th at 527 (quoting *Burns v. Watler*, 931 F.2d 140, 146 (1st Cir. 1991)).  But this case presents considerably more than duplication.  Any claim surviving dismissal of the Title VII count is

governed entirely by state law.  Rhode Island has not merely provided an adequate alternative forum; through § 28-5-24.1(c), it has prescribed the Superior Court as the forum for Plaintiff's elected RIFEPA claim.  That court obtained jurisdiction nearly three years before this one, at Plaintiff's own counseled election, and the state case is well advanced while this action sits at the pleadings.  Measured against the non-exclusive factors, the order in which the forums obtained jurisdiction, whether state law supplies the rule of decision, the adequacy of the state forum, and the desirability of avoiding piecemeal litigation, this is the rare case in which every consideration points toward the state court, and the "clearest of justifications" for deference is present.  *Jiménez v. Rodríguez-Pagán*, 597 F.3d 18, 27–28 (1st Cir. 2010) (quoting *Colorado River*, 424 U.S. at 819).

## IV.  <u>IN THE FURTHER ALTERNATIVE, THE COMPLAINT FAILS TO STATE A CLAIM.</u>

However Plaintiff's theories are labeled, they rise and fall together:  Rhode Island courts analyze RIFEPA claims under the framework governing Title VII.  *Corriveau v. Factory Mut. Ins. Co.*, No. 1:24-CV-422-JJM-LDA, 2025 WL 1004337 at *3 (D.R.I. Apr. 3, 2025); *Neri v. Ross-Simons*, Inc., 897 A.2d 42, 48 (R.I. 2006).  Claims under the Rhode Island Civil Rights Act borrow the same standards.  *See Doe*, 762 F. Supp.3d at 175–76 & n.5.  The analysis below therefore disposes of Plaintiff's federal and state discrimination and retaliation theories alike, as well as any residual theory the Complaint might be construed to suggest.[2]

---

[2]   Three residual theories warrant only brief mention.  First, the Complaint's scattered workplace grievances cannot be salvaged as a hostile-work-environment theory:  any such theory is time-barred for the reasons stated in Part I.A, and in any event conduct of the kind alleged, being "undermined," unspecified "false allegations," exclusion from a single meeting, and dissatisfaction with an internal investigation, is neither severe nor pervasive. *See Gerald v. Univ. of Puerto Rico*, 707 F.3d 7, 17-18 (1st Cir. 2013).  Second, an allegedly inadequate investigation of internal complaints is not itself a materially adverse employment action. *Quiles-Carrasquillo v. DeJoy*, No. 23-CV-1468 (FAB)(HRV), 2024 WL 5322711 (D.P.R. Sept. 13, 2024).  Third, any theory never presented to the RICHR, such as the national-origin (African birth) claim Plaintiff added to her Superior Court pleading but did not include in her charge, would exceed the scope of the charge. *See Jorge*, 404 F.3d at 565 ("A Title VII suit may extend as far as, but not beyond, the parameters of the underlying administrative charge.").

## A.    The Complaint Does Not Plausibly Allege Disparate Treatment.

A plaintiff "need not plead facts . . . that establish a *prima facie* case" under Title VII or its state analogues, but "the complaint simply must contain facts that 'plausibly allege' that the plaintiff experienced a discriminatory employment action." *Frith v. Whole Foods Market, Inc.*, 38 F.4th 263, 271 (1st Cir. 2022) (quoting *Garayalde-Rijos v. Municipality of Carolina*, 747 F.3d 15, 24 (1st Cir. 2014), and *Morales-Cruz v. Univ. of P.R.*, 676 F.3d 220, 224 (1st Cir. 2012)). The *prima facie* case "is an evidentiary model, not a pleading standard," though its elements may serve as "a prism to shed light upon the plausibility of the claim." *Rodríguez-Reyes v. Molina-Rodríguez* 711 F.3d 49, 51, 54 (1st Cir. 2013). The element that matters here is causation: assuming *arguendo* that Royster has adequately alleged her membership in protected classes, her qualifications, and an adverse action, her pleading must still supply some factual basis for a causal connection between her protected status and her termination. *See Waleyko v. Del Toro*, 719 F. Supp.3d 184, 189 (D.R.I. 2024) (quoting *Bhatti v. Trs. of Boston Univ.*, 659 F.3d 64, 70 (1st Cir. 2011)) (noting that the fourth element of the *prima facie* case requires "some evidence of a causal connection" between protected-class membership and the adverse action ).

The Complaint does not plausibly allege that causal connection. Plaintiff's only allegation linking her protected status to her termination is a comparison to her predecessor, "a Caucasian woman who was not a Muslim" who allegedly "suffered the same payroll issues . . . but was not terminated." Compl. ¶ 30. A comparator supports an inference of discrimination only if she was "similarly situated in all relevant aspects," *Waleyko*, 719 F. Supp.3d at 188 (quoting *Byrd v. Ronayne*, 61 F.3d 1026, 1032 (1st Cir. 1995)); and the Complaint offers only the bare equivalence itself; it pleads nothing about what the predecessor's errors were, their nature, severity, frequency, or consequences; whether they were known to the same decisionmakers; or whether her

Page **15** of **19**

circumstances were otherwise comparable.  Such bare, undeveloped assertions of more favorable treatment are "nonspecific, speculative, and too broad to plausibly claim discrimination based on disparate treatment."  *Waleyko*, 719 F. Supp.3d at 191; *see Diaz v. City of Somerville*, 59 F.4th 24, 32-33 (1st Cir. 2023) ("apples should be compared with apples" in the context of comparator evidence) (quoting *Dartmouth Rev. v. Dartmouth Coll.*, 889 F.2d 13, 19 (1st Cir. 1989), overruled on other grounds by *Educadores Puertorriqueños En Acción v. Hernández*, 367 F.3d 61, 64, 66-67 (1st Cir. 2004)).  And the comparison speaks only to race and religion, the predecessor is alleged to be Caucasian and non-Muslim.  To the extent Plaintiff intends any sex-based theory (her statement of claim asserts discrimination "based on race and religion" only, Compl., ¶ 32), the comparison defeats it:  her sole comparator is a woman, and her only gender-related allegation is that she was excluded from a meeting invitation that was also apparently "extended to female co-workers."  *Id*. ¶ 16.  Stripped of that conclusory equivalence, what remains is the bare juxtaposition of Plaintiff's protected characteristics and her termination.  The Complaint identifies no comment, policy, pattern, or decision referencing her race or religion; it does not identify who made the termination decision, still less allege any fact suggesting that the decisionmaker acted because of her protected traits.  Factual allegations that, stripped of conclusory legal assertions, "raise no 'more than a sheer possibility that a defendant has acted unlawfully'" do not state a claim.  *Frith*, 38 F.4th at 270 (quoting *Iqbal*, 556 U.S. at 678).  Plaintiff's own characterization of her treatment as discriminatory and her termination as pretextual are precisely the sort of legal conclusions the Court does not credit.  *See Morales-Cruz*, 676 F.3d at 224; *Iqbal*, 556 U.S. at 678.  Accordingly, the disparate-treatment claim should be dismissed.

### B.    The Complaint Does Not Plausibly Allege Retaliation

Plaintiff's retaliation theory fails for a related reason:  she alleges no plausible causal link between her protected conduct and her termination.  A retaliation plaintiff must allege protected conduct, an adverse employment action, and a "causal nexus" between them, and must ultimately prove but-for causation.  *Garayalde-Rijos*, 747 F.3d at 24 (citing  *Ponte v. Steelcase Inc.*, 741 F.3d 310, 321 (1st Cir. 2014)).  At the pleading stage she need not establish a *prima facie* case, but she "must simply allege facts that give rise to a plausible inference that retaliation occurred."  *Frith*, 38 F.4th at 277 (citing *Garayalde-Rijos*, 747 F.3d at 24).

The Complaint offers no such facts.  It alleges only that Plaintiff complained to Human Resources about discrimination "[i]n or about summer of 2022," and that she was terminated roughly eight to ten months later, on April 5, 2023.  Compl. ¶¶ 19, 28.  Beyond that bare sequence, the Complaint says nothing to connect the two events.  It does not allege that any decisionmaker knew of her complaint, referenced it, or acted because of it.  The absence of any connecting allegation, rather than the mere passage of time, is what dooms the claim.

To be sure, temporal proximity is "merely one factor relevant to causation" that matters "usually only later in the proceedings," and the First Circuit has reversed a Rule 12(b)(6) dismissal that rested solely on a rote temporal analysis.  *Garayalde-Rijos*, 747 F.3d at 25 (five-month gap; complaint also alleged the municipality hired the plaintiff only after an adverse EEOC determination on her charge, with unequal treatment beginning within weeks).  But the *Garayalde-Rijos* court expressly reserved that "some pleadings may allege a temporal gap so attenuated as not to meet the plausibility standard for surviving motions to dismiss."  *Id*.  Here, this is such a pleading.  Chronology is the only connection the Complaint offers, and it is a chronology of eight to ten months, or more than double the "[t]hree and four month periods" the First Circuit has held

"insufficient to establish a causal connection based on temporal proximity." *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 25 (1st Cir. 2004); *accord Doe*, 762 F. Supp.3d at 178 n.7.  And the City does not ask the Court to dismiss on the gap alone:  beyond chronology, the Complaint offers only the characterization that Royster's internal efforts were "met with apathy, disdain, refusal to act and attempts to delay and diminish" her claims.  Compl., ¶ 34.  That assertion identifies no actor, no act, and no date, and supplies no link between her complaint and the termination decision.  Characterizations of that kind are precisely the conclusory allegations a court disregards on a motion to dismiss, and they cannot make retaliation more than "a sheer possibility."  *Frith*, 38 F.4th at 270 (quoting *Iqbal*, 556 U.S. at 678).  On such a pleading, the retaliation claim does not cross the line from conceivable to plausible and should be dismissed.

### **CONCLUSION**

For the foregoing reasons, the City respectfully requests that the Court:  (1) dismiss the Title VII claim with prejudice as untimely and unexhausted, because no amendment or after-acquired notice can cure the untimely charge; (2) decline supplemental jurisdiction over the RIFEPA claim and dismiss it without prejudice to its prosecution in the Rhode Island Superior Court; (3) in the alternative, stay this action in favor of the first-filed Superior Court litigation; and (4) in the further alternative, dismiss each count of the Complaint for failure to state a claim under Rule 12(b)(6).

Respectfully Submitted,

Defendant
CITY OF PROVIDENCE
By its attorney,


*/s/ Brendan F. Ryan*
BRENDAN F. RYAN (#9339)
bryan@apslaw.com
ADLER POLLOCK & SHEEHAN P.C.
100 Westminster Street, 16th Floor,
Providence, RI 02903
Tel:    401-274-7200
Fax:    401-751-0604

Dated:  July 7, 2026


### CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of July, 2026, the undersigned served a copy of the foregoing document through the ECF system.  It will be sent electronically to registered participants as identified in the Notice of Electronic Filing.  Because Plaintiff is proceeding *pro se* and is not a registered CM/ECF filer, a true and correct copy was also served upon Plaintiff by first-class mail, postage prepaid, at the address set forth below.  It will also be sent via courtesy email.

Aoua Royster
1174 West Shore Road
Warwick, RI 02889
roysterac@gmail.com


*/s/ Brendan F. Ryan*


4922-6859-3339, v. 1